## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JUSAMUEL RODRIGUEZ
MCCREARY, RICHARD C.
ANAMANYA, and JOSEPH R.
COPPOLA, each individually and on
behalf of all others similarly situated,

           PLAINTIFFS,

      v.

THE FEDERAL BUREAU OF
PRISONS, THOMAS R. KANE,
DAVID J. EBBERT,

           DEFENDANTS.

Case No. 1:17-CV-01011

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
## FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..........................................................................1

II. FACTUAL BACKGROUND...........................................................1

III. ARGUMENT...............................................................................9

    A. THE PROPOSED CLASS DEFINITION IS READILY
        DISCERNIBLE AND CLEAR. ........................................11

    B. THE CLASS SATISFIES THE PREREQUISITES OF RULE
        23(a)..................................................................................13

        i. The proposed class is so numerous that joinder is
            impracticable............................................................13

        ii. The constitutional challenges to USP Lewisburg's
            policies and practices present common questions of law
            and fact. ....................................................................15

        iii. Plaintiffs' claims are typical of the class. ..................19

        iv. The Plaintiffs and their attorneys will fairly and
            adequately protect the interests of the class.............21

    C. PLAINTIFFS' CHALLENGE TO DEFENDANTS' POLICY
        OR PRACTICE SATISFIES RULE 23(b)(2).....................25

IV. CONCLUSION............................................................................27

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) .............................................................*passim*

*Barnes v. Am. Tobacco Co.*,
  161 F.3d 127 (3d Cir. 1998) ................................................................20

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d. Cir. 2006) ...............................................................21

*Bowers v. City of Phila.*,
  Civ. No. 06-CV-3229, 2006 WL 2818501 (E.D. Pa. Sept. 28,
  2006) ..............................................................................................12

*In re Chiang*,
  385 F.3d 256 (3d Cir. 2004) ................................................................16

*Clarke v. Lane*,
  267 F.R.D. 180 (E.D. Pa. 2010)................................................17, 21, 28

*In re Cmty. Bank of N. Va.*,
  622 F.3d 275 (3d Cir. 2010) ................................................................11

*Coley v. Clinton*,
  635 F.2d 1364 (8th Cir. 1980) .............................................................10

*Death Row Prisoners of Pa. v. Ridge*,
  169 F.R.D. 618 (E.D. Pa. 1996)...........................................................28

*Grant v. Sullivan*,
  131 F.R.D. 436 (M.D. Pa. 1990) ..........................................................14

*Hagan v. Rogers*,
  570 F.3d 146 (3d Cir. 2009) ................................................................17

*Harris v. Pernsley*,
  654 F. Supp. 1042 (E.D. Pa. 1987).......................................................12

ii

*Hassine v. Jeffes,*
    846 F.2d 169 (3d Cir. 1988) ..........................................................................10, 16

*Inmates of Lycoming Cty. Prison v. Strode,*
    79 F.R.D. 228 (M.D. Pa. 1978) ................................................................................15

*Inmates of the Northumberland Cty. Prison v. Reish,*
    No. 08-cv-345, 2009 U.S. Dist. LEXIS 126479 (M.D. Pa. Mar. 17,
    2009) ...............................................................................................14, 17, 23

*Wachtel ex rel. Jeffe v. Guardian Life Ins. Co. of Am.,*
    453 F.3d 179 (3d Cir. 2006) ...................................................................................12

*Johnston v. HBO Film Mgmt, Inc.,*
    265 F.3d 178 (3d Cir. 2001) ...................................................................................21

*Lanning v. Se. Pa. Transp. Auth.,*
    176 F.R.D. 132 (E.D. Pa. 1997)..............................................................................15

*Lerch v. Citizens First Bancorp, Inc.,*
    144 F.R.D. 247 (D.N.J. 1992)..................................................................................13

*Manning v. Princeton Consumer Discount Co.,*
    390 F. Supp. 320 (E.D. Pa. 1975)............................................................................14

*In re Monumental Life Ins. Co.,*
    365 F.3d 408 (5th Cir. 2004) ...................................................................................12

*New Directions Treatment Servs. v. City of Reading,*
    490 F.3d 293 (3d Cir. 2007) ...................................................................................23

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    259 F.3d 154 (3d Cir. 2001) ..........................................................................20, 21

*Pabon v. McIntosh,*
    546 F. Supp. 1328 (E.D. Pa. 1982)..........................................................................14

*Santiago v. City of Phila.,*
    72 F.R.D. 619 (E.D. Pa. 1976)..........................................................................13, 28

*Shelton v. Bledsoe,*
    775 F.3d 554 (3d Cir. 2015) ...........................................................................*passim*

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ....................................................14, 15, 20

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) .........................................................10. 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)............................................................10, 11, 19, 28

*Weiss v. York Hosp.*,
    745 F.2d 786 (3d Cir. 1984) .........................................................14, 27

*Williams v. City of Phila.*,
    270 F.R.D. 208 (E.D. Pa. 2010)...............................................12, 14, 23

# RULES

Fed. R. Civ. P. 23 ....................................................................................26, 27

Fed. R. Civ. P. 23(a)...............................................................................*passim*

Fed. R. Civ. P. 23(b) ..............................................................................*passim*

Fed. R. Civ. P. 23(c)(1)(B) .........................................................................24

Fed. R. Civ. P. 23(g) ...................................................................................24

# CONSTITUTIONAL PROVISIONS

U.S. Const., amendment VIII...................................................................1, 9

# OTHER AUTHORITIES

*Advisory Committee's Notes to Proposed Rules of Civil Procedure,* 39
    F.R.D. 69 (1966) ......................................................................................28

Federal Bureau of Prisons Program Statement P6340.04,
    "Psychiatric Services" (Jan. 15, 2005) .............................................6, 7

Federal Bureau of Prisons Program Statement 5310.16,
    "Treatment and Care of Inmates with Mental Illness" (May 1,
    2014) .........................................................................................................3, 6, 9

Federal Bureau of Prisons Program Statement P5217.02,
    "Special Management Units" (Aug. 9, 2016)...............................................2, 3, 8

Federal Bureau of Prisons Program Statement P5310.17,
    "Psychology Services Manual" (Aug. 25, 2016)..................................................4

## I.    INTRODUCTION

In this civil rights action, Plaintiffs Jusamuel Rodriguez McCreary, Richard C. Anamanya, and Joseph R. Coppola assert constitutional claims against Defendants, the Federal Bureau of Prisons, Thomas R. Kane, and David J. Ebbert, to remedy the inadequate and unconstitutional treatment of prisoners within the Special Management Unit ("SMU") at the United States Penitentiary at Lewisburg ("USP Lewisburg") who suffer from mental illness.  Plaintiffs seek (1) injunctive relief under the Eighth Amendment to the United States Constitution directing Defendants to stop the constitutional violations described in the Complaint and to ensure that prisoners housed in the SMU at USP Lewisburg receive constitutionally adequate mental health care, (2) a declaration that Defendants have violated Plaintiffs' constitutional rights, and (3) reasonable attorneys' fees, litigation expenses, and costs.  Because Defendants' policies, practices, and procedures relating to the mental health care provided to SMU prisoners are systematic practices at USP Lewisburg, Plaintiffs also seek to represent a class of all SMU prisoners suffering from mental illness who are currently or in the future will be incarcerated at USP Lewisburg.

## II.    FACTUAL BACKGROUND

Plaintiffs alleged in their Complaint that the Bureau of Prisons ("BOP") "created the SMU program to house men determined to have unique security and

management concerns." Compl. at ¶ 22.  Conditions of confinement in the SMU are more restrictive than for those in a general population environment in a high security penitentiary.  *Id.*  According to BOP policies, the SMU is a multi-level program whose mission is to teach self-discipline, pro-social values, and the ability to coexist with members of other cultural, geographical and religious backgrounds. *Id.* at ¶ 24.  The BOP may designate to an SMU any individual whose interaction with others requires "greater management" than for those in a general population environment to ensure the safety, security, or orderly operation of BOP facilities, or the protection of the public, if the prisoner meets any of a number of specified criteria.  *See id.* at ¶ 25.

The SMU program has three levels and a 12-month timeframe for completion.  *Id.* at ¶ 27.  Each of the SMU program levels has an expected timeframe for completion: under Bureau of Prisons Program Statement P5217.02, "Special Management Units," (Aug. 9, 2016), the expected timeframe is six to eight months from Level 1, two to three months for Level 2, and one to two months for Level 3.  Compl. at ¶ 28.  However, prisoners can remain at any given level for significantly longer than the expected completion time if the BOP finds that they are not ready to progress to the next level.  *Id.*  Because progression from one level to the next grants the prisoners greater relative freedom, the time it takes to progress between levels may drastically affect prisoners' time in segregation and

their access to recreation and social interaction outside of their cells. For example, prisoners at Level 1 and Level 2 remain in their cells for 23 hours a day, *id.* at ¶ 31, while prisoners at Level 3 begin to interact in a supervised open setting with individuals from various groups and receive increased privileges. *See* Program Statement P5217.02, "Special Management Units," pp. 9–12 (Aug. 9, 2016). Additionally, prisoners who receive disciplinary violations can be sent back to Level 1, where they must begin the program over again. Under Program Statement P5217.02, prisoners can be cycled through the program for up to 24 months before being designated with "SMU FAIL" status. Compl. at ¶ 29.

The BOP fails to adhere to its own policies regarding the evaluation and treatment of mentally ill prisoners. The BOP's written procedures for transferring individuals to SMUs, including USP Lewisburg, state that "inmates referred for extended placement in restrictive housing (i.e., SMU) must be reviewed by Psychology Services staff to determine if mental health issues exist that preclude placement in this setting." Federal Bureau of Prisons Program Statement 5310.16, "Treatment and Care of Inmates with Mental Illness," p. 16 (May 1, 2014). BOP policies also require intake screening for all men entering a BOP institution. Compl. at ¶ 58. With respect to this general initial and transfer intake screening, BOP policy requires a Health Services screening within 24 hours of arrival at a facility. *Id.* The BOP instructs Health Services staff to "interview[] and observe

3

[prisoners] for indicators of mental illness." Federal Bureau of Prisons Program Statement P5310.17, "Psychology Services Manual," p. 14 (Aug. 25, 2016). If staff members observe any mental health concerns, they must refer the person to Psychology Services for prompt evaluation by a psychologist. *Id.* For men assigned to restrictive housing, including the SMU, BOP policy mandates an "initial psychological review . . . on or before the 30th calendar day of consecutive confinement in restrictive housing." *Id.* at p. 17.

Despite these policies, the BOP routinely places men suffering from serious mental illness in the SMU at USP Lewisburg, ignoring previous diagnoses of serious mental illness and failing to conduct the required psychological screenings. Compl. at ¶ 60. Incoming prisoners do not receive the psychological evaluations required by BOP's policies. *Id.* at ¶ 61. Instead, upon arrival to USP Lewisburg, the prisoners receive a brief intake evaluation, lasting approximately ten minutes, with a member of USP Lewisburg's general medical staff who does not specialize in psychology or psychiatry and who does not administer an evaluation that conforms with contemporary community standards used by mental health professionals to evaluate and diagnose patients with mental illnesses. *Id.* These perfunctory interviews are wholly inadequate as a form of diagnosis of mental illness or screening for suitability for confinement at an SMU facility. *Id.*

4

Additionally, the mental health staffing at USP Lewisburg is not adequate to meet the expectations set forth in BOP policies.  According to BOP policies, all BOP institutions, regardless of custody level, are expected to provide services for men with mental illness, and Psychology Services and Health Services departments are supposed to ensure every individual with a clinically identified need for psychological treatment has access to mental health care.  *Id.* at ¶ 62.  At the time this action was filed, there were only five or fewer psychologists on staff at USP Lewisburg, and they were responsible for the mental health of all of the approximately 1,089 prisoners at USP Lewisburg.  *Id.* at ¶ 63.  Men experiencing mental health emergencies (e.g., suicidal thoughts, psychosis) are directed to inform any USP Lewisburg staff member that they need to speak with psychology staff.  However, the men report rarely, if ever, having the opportunity to speak in private with a staff psychologist.  *Id.*  Additionally, there is no psychiatrist on staff at USP Lewisburg.  *Id.* at ¶ 65.  In the event of complex mental health and psychiatric medication needs, USP Lewisburg is supposed to rely on the "Tele-health program" (also commonly called "tele-psych"), which utilizes an audiovisual interface to connect prisoners at USP Lewisburg with a consulting psychiatrist located at the United States Medical Center for Federal Prisoners ("USMCFP") in Springfield, Missouri.  *Id.*  However, prisoners report never being offered the opportunity to speak with a psychiatrist via the tele-psych.  Instead,

they are provided with word puzzles and coloring book exercises as "treatment" for their conditions. *Id.*

Moreover, prisoners at USP Lewisburg are not provided with even the minimal amount of mental health treatment envisioned by BOP policies.[1] For prisoners with mental illness in restrictive housing such as the SMU program, the BOP's policies require, "at a minimum, face-to-face mental health contacts consistent with the type and frequency indicated by the [individual's] care level, to the extent feasible. These contacts take place in a manner that protects an inmate's privacy," including removal of SMU prisoners from their cells for private or extended interviews. Compl. at ¶ 71; *see also* Program Statement 5310.16, pp. 15–16. Nonetheless, private, face-to-face mental health encounters do not occur at USP Lewisburg. Compl. at ¶ 71.

The BOP also requires psychology staff to review the psychological status of SMU prisoners every thirty days. Compl. at ¶ 72. Inmates at USP Lewisburg report that these reviews do not occur. *Id.* All BOP institutions are required to

---

[1] *See, e.g.*, Federal Bureau of Prisons Program Statement P6340.04, "Psychiatric Services," p. 1 (Jan. 15, 2005) (outlining BOP's commitment and approach to providing "essential, cost-effective, high-quality, and humane diagnostic and treatment services throughout . . . inmates' incarceration"); Program Statement 5310.16, "Treatment and Care of Inmates with Mental Illness," p. 2 (May 1, 2014) (stating a purpose "to ensure that inmates with mental illness are identified and receive treatment to assist their progress toward recovery, while reducing or eliminating the frequency and severity of symptoms and associated negative outcomes of mental illness").

provide psychiatry services. *Id.* at ¶ 73; *see also* Program Statement P6340.04, "Psychiatric Services," pp. 6–7 (Jan. 15, 2005). These required services include "[r]isk assessment for acts of self-harm or harm towards others"; "[m]ental health screening of inmates suffering from symptoms or behavioral disturbances indicative of possible mental illnesses or disorders"; "[d]iagnosis and treatment of mild to moderate mental illnesses such as non-psychotic major depression, anxiety disorders, or sleep disorders"; "[c]ontinuation of psychiatric treatment initiated at other institutions or prior to incarceration"; and "[m]onitoring of inmates on psychiatric medications for side-effects and drug interactions," among other services. Program Statement P6340.04, p. 7. However, despite these policies concerning the development of treatment plans and delivery of mental health services, the BOP has failed to develop meaningful treatment plans for prisoners at USP Lewisburg who have chronic and obvious mental illness, and has failed to establish a reliable mechanism for delivering elementary mental health services, such as screening for mental illness, access to psychiatry services, mental health medication, timely access to crisis counseling, and counseling in both individual and group settings that is delivered in a consistent fashion. Compl. at ¶ 75.

The BOP is failing to adhere to its own policies by continuing to house mentally ill individuals at USP Lewisburg. The BOP's August 9, 2016 Program Statement on Special Management Units states that an individual may be removed

from the SMU program if it becomes clear that his mental health does not reasonably allow him to complete the program. *Id.* at ¶ 88; *see also* Program Statement P5217.02, p. 2. However, prisoners with mental illness and serious mental illness held at USP Lewisburg are sometimes confined in the SMU at USP Lewisburg for months or years without mental health treatment, with predictably devastating results. *Id.* at ¶ 89. These conditions exacerbate their mental illness, making them increasingly dangerous to themselves and others. *Id.*

Three named Plaintiffs have raised class action claims on behalf of all persons who were, as of the filing date of the Complaint (June 9, 2017), or are now, or will be in the future, confined to the custody of the United States Bureau of Prisons in the United States Penitentiary Lewisburg and who suffer from a Serious Mental Illness or a Mental Illness requiring treatment under one or more of the BOP's CARE levels as set forth in Program Statement 5310.16 (May 1, 2014). At the time this action was filed, Plaintiffs Jusamuel McCreary, Richard Anamanya, and Joseph Coppola were incarcerated at USP Lewisburg and were receiving constitutionally deficient mental health care at USP Lewisburg. Compl. at ¶¶ 18, 101–62. Plaintiffs have alleged that the violation of the rights of class members were caused by policies and practices of the Defendants that are common to the class as a whole. *Id.* at ¶¶ 163–66.

## III.   ARGUMENT

Class certification is appropriate here to resolve the class's Eighth Amendment claims against Defendants for declaratory and injunctive relief requiring the BOP to comply with its policies regarding the treatment of individuals with mental illness and to provide mental health diagnoses and treatment consistent with the requirements of the Eighth Amendment for individuals who have been committed to the BOP's custody.

Federal Rule of Civil Procedure 23(b)(2) was largely crafted to facilitate cases pursuing injunctive relief on behalf of a group of individuals against a general course of conduct. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 59 (3d Cir. 1994) ("In fact, the injunctive class provision was designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons.") (quotations omitted); s*ee also Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015) ("[T]he key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted— the notion that the conduct is such that it can be enjoined or declared unlawful *only* as to all of the class members or as to none of them.'" (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011))). The "proper role" of a Rule 23(b)(2) class action is to "remedy[] systemic violations of basic rights of large and often amorphous classes," *Baby Neal*, 43 F.3d at 64, and a (b)(2) class is "an especially

9

appropriate vehicle for civil rights actions seeking . . . declaratory relief for prison . . . reform." *Hassine v. Jeffes*, 846 F.2d 169, 178 n.5 (3d Cir. 1988) (quoting *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980)).

To obtain class certification, a plaintiff must establish, by a preponderance of the evidence, that the putative class satisfies all the prerequisites of Rule 23(a) and complies with Rule 23(b)(2)'s requirement that final injunctive or declaratory relief is appropriate with respect to the class as a whole. *See Shelton*, 775 F.3d at 563; *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc). Under Rule 23(a), a plaintiff must demonstrate that:

(1) the class is "so numerous that joinder of all members is impracticable";

(2) there are "questions of law or fact common to the class";

(3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and

(4) the representative parties will "fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a); *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010). Under Rule 23(b)(2), Plaintiff must show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2); *Sullivan*, 667 F.3d at 296. To make this showing, the class must demonstrate that "a single injunction or

10

declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores,* 564 U.S. at 362.  Here, because the proposed class satisfies the criteria of Rule 23(a) and 23(b)(2), class certification is warranted.

**A.    THE PROPOSED CLASS DEFINITION IS READILY DISCERNIBLE AND CLEAR.**

The proposed class of "all current and future SMU prisoners with a Mental Illness or Serious Mental Illness at USP Lewisburg" is objective, clear, and readily discernible.  The Third Circuit has noted that "[a] precise class definition is not as critical where certification of a class for injunctive or declaratory relief is sought under [R]ule 23(b)(2)."  *Shelton*, 775 F.3d at 562 (quoting *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004)).  Rather, a 23(b)(2) class seeking only injunctive or declaratory relief, such as the putative class, need only be defined by a "readily discernible, clear, and precise statement of the parameters."  *Id*. at 563 (quoting *Wachtel ex rel. Jeffe v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187 (3d Cir. 2006)).  Courts in this circuit have frequently certified similar classes of current and future prisoners.  *See, e.g.*, *Williams v. City of Phila.*, 270 F.R.D. 208, 213–14 (E.D. Pa. 2010) (certifying a class consisting of "[a]ll persons who are or will in the future be confined in the Philadelphia Prison System, and who are or will in the future be subjected to the conditions of confinement, including triple celling, or placement in dormitories, without minimally adequate security, services or programs as set forth in plaintiffs' Complaint"); *Bowers v. City of Phila.*, Civ.

11

No. 06-CV-3229, 2006 WL 2818501, at *8 (E.D. Pa. Sept. 28, 2006) (certifying a class consisting of "[a]ll persons who have been or will in the future be held post-preliminary arraignment in the custody of the Philadelphia Police Department, including its districts or the Police Administration Building, or anywhere in the Philadelphia Prison System, pending intake/admissions processing, at the Philadelphia Prison System, who have been or will in the future be subjected to the conditions of confinement as set forth in Plaintiffs' Complaint"); *Harris v. Pernsley*, 654 F. Supp. 1042, 1045 (E.D. Pa. 1987) (approving settlement that required certification of a class consisting of "all individuals who are, or who have been inmates of the Philadelphia prison system since April 30, 1980 and all future inmates of the Philadelphia prison system during the time the court retains jurisdiction over the case").   Here, Plaintiffs' proposed class definition of "all current and future SMU prisoners with a Mental Illness or Serious Mental Illness at USP Lewisburg" is objective, clear, and readily discernible, as the parameters for class membership are simple and easily verified by reviewing the prisoners' BOP records. *See Shelton*, 775 F.3d at 563.

**B.    THE CLASS SATISFIES THE PREREQUISITES OF RULE 23(a)**

**i.    The proposed class is so numerous that joinder is impracticable.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticability does not mean impossibility, but rather that the difficulty or inconvenience of joining all members of the class calls for class certification."  *Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247, 250 (D.N.J. 1992).  "The numerosity prerequisite is satisfied as long as the class representatives can show impracticability of joinder, even if the exact size of the class is unknown."  *Santiago v. City of Phila.,* 72 F.R.D. 619, 624 (E.D. Pa. 1976).

Courts do not rigidly apply the numerosity requirement in civil rights cases seeking injunctive or declaratory relief, as the requested relief would typically extend to the entire class even if the case was brought as an individual suit.  *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir. 1984).  A court "may certify a class even if it is composed of as few as 14 members."  *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (citing *Manning v. Princeton Consumer Discount Co.*, 390 F. Supp. 320, 324 (E.D. Pa. 1975) (finding a class of 15 satisfied numerosity)); *see also Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) ("[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the

13

first prong of Rule 23(a) has been met."); *Williams v. City of Phila.*, 270 F.R.D. at 214–15 ("No minimum number of plaintiffs is required, but courts in this circuit have generally found that a class of 40 or more plaintiffs satisfies the numerosity requirement."); *Inmates of the Northumberland Cty. Prison v. Reish*, No. 08-cv-345, 2009 U.S. Dist. LEXIS 126479, at *56 (M.D. Pa. Mar. 17, 2009) ("Even if this problem plagued only 10% of the prison population, 18–21 inmates would be affected, a number which surpasses the threshold for joinder."); *Pabon v. McIntosh*, 546 F. Supp. 1328, 1333 (E.D. Pa. 1982) (finding joinder of 30 to 40 inmates would be impractical); *Inmates of Lycoming Cty. Prison v. Strode*, 79 F.R.D. 228, 232 (M.D. Pa. 1978) ("[A]lthough the population of the prison seems to only average somewhere around 40 or 50 at any particular moment . . . joinder is impractical here and the size of the class is quite large because we are concerned with future inmates.").

According to this precedent, the numerosity prerequisite is clearly satisfied here.  The precise size of the class is known only to the Defendants; however, Plaintiffs allege that dozens of SMU inmates who suffer from a Mental Illness or Serious Mental Illness are currently incarcerated at USP Lewisburg.  *See* Compl. at ¶¶ 9, 165.  Moreover, "the number of class members will increase further" throughout the course of litigation as the BOP's policies and practices towards mentally ill SMU inmates persist.  *See Stewart*, 275 F.3d at 227.

14

Additionally, joinder is impracticable because the putative class includes future as well as present SMU inmates who suffer from a Mental Illness or Serious Mental Illness. Due to the shifting prison population, future claimants cannot be identified, and therefore cannot be joined, at this time. *See, e.g.*, *Lanning v. Se. Pa. Transp. Auth.*, 176 F.R.D. 132, 148 (E.D. Pa. 1997) ("[W]here the class is based on a common characteristic, here, gender, and where it does not strain credulity to recognize that there will be more than a minuscule number of future members, the joinder of future potential job applicants may be counted towards satisfaction of the numerosity requirement."). Due to the number of mentally ill SMU inmates currently incarcerated at USP Lewisburg, the likelihood that additional mentally ill SMU inmates will be incarcerated at USP Lewisburg in the future, and the impossibility of joining those future arrivals, the proposed class satisfies Rule 23(a)(1).

### ii.    The constitutional challenges to USP Lewisburg's policies and practices present common questions of law and fact.

"The commonality standard of Rule 23(a)(2) is not a high bar; it does not require identical claims or facts among class members." *In re Chiang*, 385 F.3d 256, 265 (3d Cir. 2004); *see also Shelton*, 775 F.3d at 564 (quoting *Hassine*, 846 F.3d at 177) (stating that commonality does not require that the representative plaintiff "ha[s] endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be common to the class").

15

Commonality is easily satisfied in civil rights challenges to government policies or practices as the opposing party "has acted or refused to act on grounds that apply generally to the class." *See Baby Neal*, 43 F.3d at 57 ("Indeed, (b)(2) classes have been certified in a legion of civil rights cases where commonality findings were based primarily on the fact that defendant's conduct is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct.").

Moreover, actions seeking an injunction against a common policy or practice imposed on incarcerated inmates raise common questions in this Circuit. *See, e.g.*, *Hagan v. Rogers*, 570 F.3d 146, 158 (3d Cir. 2009) (reversing district court's denial of class certification for a class for lack of commonality and typicality, when plaintiff alleged common threat of injury to incarcerated population); *Clarke v. Lane*, 267 F.R.D. 180, 196–97 (E.D. Pa. 2010) (holding the commonality requirement was satisfied for a putative class of all current and future residents of an institution challenging inadequate medical care despite numerous factual differences); *Inmates of the Northumberland Cty. Prison,* 2009 U.S. Dist. LEXIS 126479, at *65 (holding that commonality was met for a class of pre-trial detainees and convicted inmates as similarly situated plaintiffs were subjected to the same policies, shared a common question of law and posited the same constitutional argument challenging their conditions).

16

Commonality is plainly established in this case. The proposed class members are all current or future SMU inmates incarcerated at USP Lewisburg who suffer from a mental illness or serious mental illness. They are all subject to the policies and practices implemented at that specific BOP facility, for individuals similarly situated, by the same supervisory officials. The Complaint alleges that class members are subject to the same threat of harm[2] as a result of Defendants' policies, practices, and procedures, namely, the risk of increased psychological and/or physical harm as a consequence of receiving constitutionally inadequate mental health care.

Furthermore, mentally ill SMU inmates at USP Lewisburg will continue to suffer as a result of Defendants' policies, practices, and procedures, and all class members are subject to the threat of the unconstitutional conditions created as a result. In particular, questions of fact or law common to the class include, but are not limited to, the following:

> 1. Whether Defendants' failure to maintain an adequate program for appropriate mental health evaluations at USP Lewisburg violates the constitutional requirement to provide adequate mental health treatment to individuals with mental illness.

---

[2] As the *Baby Neal* court wrote, "class members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice." 43 F.3d at 56 (emphasis in original).

17

2.    Whether Defendants violate their own written policies and procedures and the Constitution by placing individuals with serious mental illness in the SMU at USP Lewisburg.

3.    Whether Defendants violate their own written policies and the Constitution by taking inappropriate disciplinary actions against individuals with mental illness.

4.    Whether Defendants violate their own written policies and the Constitution by failing to maintain an adequate program to diagnose and treat individuals with mental illness at USP Lewisburg.

5.    Whether class members are subject to harm as a result of Defendants' failure to provide adequate treatment for individuals diagnosed with a mental illness, including a serious mental illness.

6.    Whether Defendants' repeated violations of numerous mental health policies have placed members of the class at risk for increased psychological and/or physical harm.

These claims could be resolved on a class-wide basis if this Court enjoins Defendants from continuing their policy, pattern, or practice of providing inadequate care or treatment to SMU inmates incarcerated at USP Lewisburg who are suffering from a mental illness or serious mental illness. Any one of these factual or legal issues is sufficient to meet Rule 23(a)(2)'s commonality requirement. *See Wal-Mart Stores*, 564 U.S. at 359 (stating that all that is required is a single common question of law or fact that is of central importance to the case).

Any factual differences between Plaintiffs' circumstances and those of the rest of the class (such as the specific mental illness or serious mental illness from

18

which the inmate is suffering, the circumstances leading to their placement in the

SMU program, etc.) do not preclude a finding of commonality.  Plaintiffs are

seeking injunctive relief with respect to policies and practices that all class

members must face by virtue of incarceration at USP Lewisburg.  In such cases, as

the Third Circuit has noted, it is unlikely that differences in the factual background

of each claim will affect the outcome of the legal issue:

> This is especially true where plaintiffs request declaratory and
> injunctive relief against a defendant engaging in a common course of
> conduct toward them, and there is therefore no need for individualized
> determinations of the propriety of injunctive relief.  Indeed, (b)(2)
> classes have been certified in a legion of civil rights cases where
> commonality findings were based primarily on the fact that
> defendant's conduct is central to the claims of all class members
> irrespective of their individual circumstances and the disparate effects
> of the conduct.

*Baby Neal*, 43 F.3d at 57 (citation and emphasis omitted).  In this case, all class

members are currently, or will in the future be, subject to Defendants' policies or

practices regarding the care and treatment of mentally ill inmates.  Any factual

differences among the class members cannot defeat certification.

### iii.    Plaintiffs' claims are typical of the class.

Plaintiffs' claims are typical of the class they seek to represent because they

are caused by the same policies that give rise to the claims of other class members

and rely on the same legal theories.  *See Stewart*, 275 F.3d at 227–28; *Newton v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183–84 (3d Cir. 2001);

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998). The typicality requirement asks "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Baby Neal*, 43 F.3d at 55; *see also Clarke v. Lane*, 267 F.R.D. at 197 (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d. Cir. 2006) (finding typicality met when all putative class members suffered "constitutional violations under a uniform system")). Typicality is established when "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant . . . regardless of factual differences." *Newton*, 259 F.3d at 183–84.

A class representative's claim need not be identical to the claims of the class members to be typical. *Johnston v. HBO Film Mgmt, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). Any incidental factual differences among and between the Plaintiffs and those of the class members will not render the claims atypical, because the claims are based on the same legal theory. *Clarke*, 267 F.R.D. at 197 (citing *Beck*, 457 F.3d at 295–96). As the Third Circuit has noted, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal*, 43 F.3d at 58.

Here, the injuries sustained by Plaintiffs arise from the same patterns, practices, and policies to which the entire class is subjected. Central to their claims

are the systematic policies of failing to adequately screen (or screen at all) prisoners designated to the SMU for mental illness; confining individuals with mental illness in the SMU for conduct directly attributable to their mental illness; operating a disciplinary system that does not consider a prisoner's serious mental illness and the impact of isolation in assessing whether to sanction the prisoner or, if so, the nature of the sanction; failing to provide minimally adequate psychiatric and psychological services to individuals diagnosed with mental illness in the SMU program; refusing to consistently provide prescribed medications for treatment of psychiatric conditions; maintaining conditions in the SMU that exacerbate individuals' serious mental illness, including near-constant isolation with little, if any, human contact. *See* Compl. at ¶ 169. Because Plaintiffs' claims arise out of the same policies or practices that gives rise to the claims of other class members, their claims are typical. Although the class members' injuries may differ, those injuries—or threats of injury—are all the direct and proximate result of Defendants' policies and practices and, therefore, are typical within the meaning of Rule 23(a)(3).

### iv.   The Plaintiffs and their attorneys will fairly and adequately protect the interests of the class.

Plaintiffs and their counsel will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). "Adequacy of representation assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys

for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Baby Neal*, 43 F.3d at 55.  Plaintiffs meet both of these factors because (1) there are no conflicts of interests between the Plaintiffs and the unnamed class members; and (2) counsel for the proposed class are experienced and well-qualified to handle the litigation.  *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007).

As explained in the typicality section, Plaintiffs' interests align with the interests of the proposed class as a whole.  Plaintiffs do not have any interests antagonistic to other members of the putative class.  First, no unique defenses could be asserted against the Plaintiffs that would distract from the class claims or defenses.  *See Williams v. City of Phila.*, 270 F.R.D. at 216–20 (finding that the named plaintiffs "fairly and adequately protect the interests of the class" because, in part, there are no "unique defenses that would consume a disproportionate amount of time and attention").  Plaintiffs' interests coincide with those of the proposed class to seek a declaration that the policies, patterns, or practices alleged in the Complaint are unconstitutional, as well as a permanent injunction prohibiting Defendants from further implementing such patterns, practices, and policies.  *See Inmates of the Northumberland Cty. Prison*, 2009 U.S. Dist. LEXIS 126479, at *74–75 ("In fact, the interests of the remaining putative representatives are perfectly aligned with those of the putative class; namely, they wish to rectify

22

the conditions at NCP so that current and future inmates are not subjected to deprivations of their constitutional rights while institutionalized at NCP."). The granting of the relief sought by Plaintiffs would benefit the class members and would not impair any future class member's claims.

Further, under Rule 23(a)(4) and Rule 23(g), counsel for Plaintiffs will vigorously represent the class in this litigation. An order certifying a class action must appoint class counsel under Rule 23(g). Fed. R. Civ. P. 23(c)(1)(B). In turn, Rule 23(g) requires a court to consider the following non-exhaustive factors:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)   counsel's knowledge of the applicable law; and
>
> (iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)–(B).

Counsel for Plaintiffs satisfies all of these factors. Plaintiffs' attorneys are qualified and experienced in conducting class actions, Section 1983 and prisoners' rights litigation. Plaintiffs' counsel includes lawyers from Latham & Watkins LLP who possess extensive class action experience. *See* Exhibit A, Declaration of Kevin H. Metz. Plaintiffs are also represented by the Pennsylvania Institutional Law Project, a legal services organization which primarily represents inmates in prisons and county jails throughout the Commonwealth of Pennsylvania in Section

1983 litigation and whose attorneys have significant experience in federal class action litigation. *See e.g.*, *Richardson v. Director, Fed. Bureau of Prisons*, 3:11-cv-2266 (M.D. Pa) (Alexandra Morgan-Kurtz, class action challenging conditions of confinement at USP Lewisburg), *Hollihan v. Pa. Dep't of Corrs.*, 3:15-cv-0005 (M.D. Pa) *(*Alexandra Morgan-Kurtz, class action challenging Pennsylvania Department of Corrections' ("DOC") "one good eye" policy regarding cataract surgery); *Seitz v. Allegheny County*, 2:16-cv-1879 (W.D. Pa) (Alexandra Morgan-Kurtz, class action challenging solitary confinement of pregnant women at county jail); *Stradford v. Wetzel*, 2:16-cv-2064 (E.D. Pa) (Alexandra Morgan-Kurtz, class action regarding the DOC's policy refusing to release paroled individuals with sex offenses); *see also* Exhibit B, Declaration of Alexandra Morgan-Kurtz. Additionally, Plaintiffs are represented by the Washington Lawyers Committee for Civil Rights & Urban Affairs ("WLC"), a non-profit organization with extensive experience in prisoners' rights and class action litigation. *See, e.g.*, *Cunningham v. Fed. Bureau of Prisons*, Civ. No. 12-cv-01570-RDM (D. Colo.) (Philip Fornaci/WLC, class action challenging conditions of confinement and failure to provide mental health services to prisoners at ADX maximum security prison); *Daniel v. Fulwood*, Civ. No. 1:10-cv-00862 (D.D.C.) (Philip Fornaci/WLC, class action challenging improper retroactive application of parole guidelines to prisoners); *Richardson v. Director*, 3:11-cv-2266) (M.D. Pa.) (Philip

24

Fornaci/WLC, class action as described above); *Jarboe v. Md. Dep't of Pub. Safety & Corrs.*, No. 1:12-cv-00572-ELH (D. Md.) (WLC, class action challenging mistreatment of and failure to accommodate deaf prisoners in Maryland); *McBride v. Mich. Dep't of Corrs.*, No. 15-11222 (E.D. Mich.) (WLC, class action challenging mistreatment of and failure to accommodate deaf prisoners in Michigan); *see also* Exhibit C, Declaration of Philip Fornaci.

Plaintiffs' collective counsel is more than qualified to represent the class in this case. They will assure the "vigorous prosecution of claims" demanded by Rule 23.

Plaintiffs' proposed class thus meets the requirements of numerosity, commonality, typicality, and adequacy of the class representative under Rule 23(a), and this Court should grant Plaintiffs' certification motion.

## C.    PLAINTIFFS' CHALLENGE TO DEFENDANTS' POLICY OR PRACTICE SATISFIES RULE 23(b)(2).

In addition to meeting all of the requirements of Rule 23(a), Plaintiffs also comply with Rule 23(b)(2). Like most class-action civil rights lawsuits, a class action is appropriate here because Defendants have acted or refused "to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiffs' claims, which seek declaratory or injunctive relief, satisfy the requirements of Rule 23(b)(2) because they seek to define the appropriate "relationship between the defendant(s) and the world at large" rather than to benefit the individual plaintiffs. *Baby Neal*, 43 F.3d at 58–59 (quoting *Weiss*, 745 F.2d at 811). Accordingly, Rule 23(b)(2) "is almost automatically satisfied." *Id*. Indeed, Rule 23(b)(2) was "designed specifically for civil rights cases seeking declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." *Id*.; *see also Shelton*, 775 F.3d at 562 (noting that the Advisory Committee note to Rule 23 states that "illustrative" examples of a (b)(2) class are "various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, *usually one whose members are incapable of specific enumeration*." (quoting Fed. R. Civ. P. 23 Advisory Committee's note (1966)) (emphasis in *Shelton*)). As the Supreme Court has explained, the key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360 (citation omitted). Here, Plaintiffs' claims are so inherently intertwined with that of the class as a result of Defendants' common policies and practices that injunctive and declaratory relief as to any would be injunctive and declaratory relief as to all. *See Clarke*, 267 F.R.D. at 198.

26

Rule 23(b)(2) is "met even if the action or inaction 'has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.'" *Santiago*, 72 F.R.D. at 626 (quoting *Advisory Committee's Notes to Proposed Rules of Civil Procedure,* 39 F.R.D. 69, 102 (1966)). In circumstances similar to those here, where the claim is premised on a class suffering from constitutional injuries due to the implementation of policies and practices applied to all detainees, courts have found Rule 23(b)(2) satisfied. *See, e.g.*, *Death Row Prisoners of Pa. v. Ridge*, 169 F.R.D. 618, 623 (E.D. Pa. 1996) (certifying a Rule 23(b)(2) class of death row inmates); *Santiago*, 72 F.R.D. at 625–26 (certifying Rule 23(b)(2) class of juveniles challenging the conditions of confinement at youth study center). As a result, Plaintiffs' claims meet the requirements of Rule 23(b)(2), and this Court should grant their motion for class certification.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court certify the class proposed in this Motion and appoint their counsel as class counsel.[3]

---

[3] If this Court determines that a fuller record is needed to rule on the motion, Plaintiffs respectfully request precertification discovery.

27

DATED:  August 23, 2017                Respectfully submitted,

/s/ Kevin H. Metz
Kevin H. Metz (*admitted pro hac vice*)
Marissa R. Boynton (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel.: (202) 637-2200
kevin.metz@lw.com
marissa.boynton@lw.com

Alexandra Morgan-Kurtz
PENNSYLVANIA INSTITUTIONAL LAW
PROJECT
PA ID No. 312631
100 Fifth Ave., Suite 900
Pittsburgh, PA 15222
Tel.: (412) 434-6175
amorgan-kurtz@pailp.org

Philip Fornaci (admitted *pro hac vice*)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS & URBAN AFFAIRS
11 Dupont Circle NW, Suite 400
Washington, DC 20036
Tel.: (202) 319-1000
phil_fornaci@washlaw.org

*Counsel for Plaintiffs*

28

## <u>CERTIFICATE OF SERVICE</u>

Undersigned counsel for Plaintiffs Jusamuel Rodriguez McCreary, Richard C. Anamanya, and Joseph R. Coppola advises this Honorable Court that counsel for Defendants have not been identified. This Brief in Support of Plaintiffs' Motion for Class Certification will be served upon each Defendant once their counsel have been identified.

DATED: August 23, 2017    By: /s/ Kevin H. Metz
    Kevin H. Metz (*admitted pro hac vice*)
    LATHAM & WATKINS LLP
    555 Eleventh Street NW, Suite 1000
    Washington, DC 20004
    Tel.: (202) 637-2200
    kevin.metz@lw.com

    *Counsel for Plaintiffs*

29

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT</u>

Pursuant to Local Rule 7.8(b)(2), I hereby certify that the foregoing Brief in Support of Plaintiffs' Motion for Class Certification does not exceed 6,500 words and therefore is in compliance with the Order signed by Magistrate Judge Susan E. Schwab on August 21, 2017.

The brief, exclusive of cover page, Table of Contents, Table of Authorities, signature block, and accompanying certificates, contains 6,430 words.

DATED: August 23, 2017

By: /s/ Kevin H. Metz
Kevin H. Metz (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel.: (202) 637-2200
kevin.metz@lw.com

*Counsel for Plaintiffs*

30