**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUSAMUEL RODRIGUEZ MCCREARY, *et al.*, | : : : | CIVIL NO: 1:17-CV-01011 |
| Plaintiffs, | : : | |
| v. | : : : | (Judge Kane) |
| THE FEDERAL BUREAU OF PRISONS, *et al.*, | : : : : | (Chief Magistrate Judge Schwab) |
| Defendants. | : | |

**ORDER**
November 27, 2018

**I. Introduction.**

    This civil rights case comes before us for resolution of an ongoing dispute between the parties over the scope of the proposed protective order in the case. Specifically, the plaintiffs assert that the order should protect the plaintiffs' medical information, as well as the medical information of any possible other plaintiffs in the event that a class is certified. The defendants in turn argue that the plaintiffs' medical records should not be protected by the order and further assert that any medical records of non-plaintiffs that are produced through discovery should be marked as viewable only by the plaintiffs' attorneys. We have reviewed the parties' briefs on the issue, and for the reasons that follow we find that the

protective order should cover the plaintiffs' medical records, and that the viewing of non-party medical records should be limited to the plaintiffs' attorneys.

**II. Background and Procedural History.**

The plaintiffs in this case, Jusamuel Rodriguez McCreary ("McCreary"), Richard C. Anamanya ("Anamanya"), and Joseph R. Coppola ("Coppola"), initiated this action by filing a complaint against the Federal Bureau of Prisons ("BOP"), Thomas R. Kane ("Kane"), and David J. Ebbert ("Ebbert") on June 9, 2017. *See doc. 1*. The complaint alleges "inadequate and unconstitutional treatment" of inmates housed in the Special Management Unit ("SMU") at the United States Penitentiary at Lewisburg, Pennsylvania ("USP Lewisburg"). *Id.* ¶ 1. Specifically, the lawsuit "seeks to recognize that it is unconstitutional to hold men with mental illness" in the conditions in which they are held in the SMU. *Id.* ¶ 2. The plaintiffs assert that such treatment violates the Eighth Amendment of the United States Constitution. *Id.*

On August 11, 2017, the plaintiffs filed a motion for class certification under Federal Rule of Civil Procedure 23. *See doc. 14*. The plaintiffs' motion seeks to certify a class defined as follows:

> All persons who were, as of the filing date of the Complaint (June 9, 2017), or are now, or will be in the future, confined to the custody of the United States Bureau of Prisons in the United States Penitentiary Lewisburg and who suffer from a Serious Mental Illness or a Mental

>Illness requiring treatment under one or more of the BOP's CARE levels as set forth in BOP Program Statement 5310.16 (May 1, 2014).

*Id.* at 1. The plaintiffs' motion to certify a class is still pending before the court.

Following the plaintiffs' motion for class certification, the defendants filed a motion to dismiss the case for failure to state a claim upon which relief could be granted, or, in the alternative, a motion for summary judgment. *See doc. 23*. Four days later, the defendants filed a motion to stay the court's resolution of the plaintiffs' motion to certify a class until the court had resolved the defendants' dispositive motion. *Doc. 24*. With regard to their dispositive motion, the defendants argued that all claims against Ebbert and Kane should be dismissed because the plaintiffs "failed to allege sufficient facts evidencing the personal involvement of these Defendants in the alleged constitutional deprivations." *Doc. 29* at 6. The defendants further argued that the plaintiffs' conditions of confinement claims, claims relating to the prison disciplinary system, and Eighth Amendment medical claims should be dismissed. *Id.* Finally, the defendants argued that they were entitled to judgment as a matter of law in the case because the record showed that "they were not deliberately indifferent to the mental health needs of the Plaintiffs." *Id.*

On December 7, 2017, we issued an order granting the defendants' motion to stay disposition of the plaintiffs' motion to certify a class. *Doc. 44*. Shortly thereafter, the defendants filed a motion for a protective order to stay all discovery

until thirty days after the court ruled on the defendants' dispostive motion. *Doc. 45*. On April 3, 2018, the plaintiffs filed a motion to seal a number of the plaintiffs' medical records. *See docs. 52-53*. On May 31, 2018, we denied the plaintiffs' motion to seal, reasoning that "the Plaintiffs have not adequately shown that disclosure will work a clearly defined and serious injury to them…. Thus, we conclude that the Plaintiffs, as the movants, have not met the showing that is required to justify the perfunctory closing of the discussed judicial records." *Doc. 57* at 10.

On June 20, 2018, we issued a report and recommendation in which we recommended that the court deny the defendants' dispositive motion, that the court deny the defendants' motion to stay discovery, and that Mark S. Inch ("Inch") be substituted as a defendant in place of Kane. *Doc. 58* at 55. We further recommended that if the plaintiffs intended to raise claims challenging the fact or duration of their confinement or to challenge the conditions of their confinement, they were to amend their complaint to more properly reflect those claims. *Id.* at 54. The defendants' objected to our report and recommendation, arguing that the ambiguity with regard to the plaintiffs' conditions of confinement claims and claims challenging the fact or duration of their confinement suggested that those claims should be dismissed. *Doc. 59* at 2. The plaintiffs then clarified that they were not challenging the fact, duration, or conditions of their confinement. *Doc.*

4

*61* at 4.  On September 28, 2018, following a conference call with the undersigned, the parties withdrew their objections to the report and recommendation pursuant to a stipulation that the plaintiffs were not challenging the fact, duration, or conditions of their confinement.  *See docs. 69-70*.  Shortly thereafter, the parties filed letter briefs addressing the scope of the proposed protective order.

In their brief, the plaintiffs argue that the plaintiffs' medical information, as well as the medical information of any members of the proposed class, should be treated as confidential information.  *Doc. 71* at 1.  The plaintiffs argue that the court should enter an order protecting the confidentiality of medical records because "[i] it is beyond dispute that 'an individual has a constitutional right to privacy which protects 'the individual interest in avoiding disclosure of personal matters.'"  *Id.* (quoting *Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001)).

The plaintiffs argue that they "will suffer serious injury if their medical information is publicly disclosed." *Id.* at 2.  They note that disclosure of their medical records would publicize embarrassing and sensitive information about their mental health which could lead to negative consequences within USP Lewisburg.  *Id.*  They further note that for those members of the class who are scheduled to be released from USP Lewisburg in the future, "the public availability of their private medical information is likely to cause them more harm in obtaining housing and employment."  *Id.*  The plaintiffs then argue that the defendants would

not "suffer any prejudice to their ability to mount a defense" if the medical records were treated as confidential. *Id.* The plaintiffs note that the defendants would receive the records in unredacted form and would be able to use them in drafting briefs before the briefs and records were redacted from public view. *Id.*

The defendants argue that medical records should not be considered confidential under the protective order. *Doc. 72* at 1. They point to the fact that we earlier denied the plaintiffs' motion to seal documents on the basis that the plaintiffs "had not offered anything more than 'broad and conclusory' statements regarding the risk of harm in releasing the documents." *Id.* The defendants then argue "[t]he Court should also prohibit the named Plaintiffs from possessing any other inmate's, including other named Plaintiffs', medical records, including mental health records, while in the custody of the Bureau of Prisons." *Id.* The defendants argue "[i]nformation that is contained within the medical records and mental health records of inmates could pose security risks if that information is provided to Plaintiffs and used or further disclosed to other persons." *Id.* The defendants suggest that any such information should be filed under seal unless specified otherwise by the court. *Id.* Finally, the defendants argue that the plaintiffs' medical records should not be considered confidential because "Plaintiffs have not demonstrated any specific injury by having their … mental health records publicly available." *Id.*

**III. Discussion.**

"It is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) (citing *Littlejohn v. BIC Corp.*, 851 F.2d 673, 677-78 (3d Cir. 1988)). "The public's right of access extends beyond simply the ability to attend open court proceedings." *Id.* "Rather, it envisions a pervasive common law right to inspect and copy public records and documents, including judicial records and documents." *Id.* "[T]he right of access strengthens confidence in the courts." *Id.* (citing *Littlejohn*, 851 F.2d at 678).

"The practical effect of the right to access doctrine is to create an independent right for the public to view proceedings and to inspect judicial records." *Id.* at 193 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 781 (3d Cir. 1994)). "Whether or not a document or record is subject to the right of access turns on whether that item is considered to be a 'judicial record.'" *Id.* at 192 (quoting *Pansy*, 23 F.3d at 781). "The status of a document as a 'judicial record,' in turn, depends on whether a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *Id.* (quoting *Pansy*, 23 F.3d at 780-83).

"Although the common law right to public access is a recognized and venerated principle, courts have also recognized the accompanying principle that

7

'the right is not absolute.'" *Id.* at 194 (quoting *Littlejohn,* 851 F.2d at 678). "The presumption of public access may be rebutted." *Id.* (citing *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 662 (3d Cir. 1991)). "In order to override the common law right of access, the party seeking the closure of a hearing or the sealing of part of the judicial record 'bears the burden of showing that the material is the kind of information that courts will protect' and that 'disclosure will work a clearly defined and serious injury to the party seeking closure.'" *Id.* at 194 (citing *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)). "In delineating the injury to be prevented, specificity is essential." *Id.* (citing *Publicker Indus. Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). "Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.* "As is often the case when there are conflicting interests, a balancing process is contemplated." *Id.* "[T]he strong common law presumption of access must be balanced against the factors militating against access. The burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." *Id.* (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993)).

    The documents at issue in the instant case are medical records which would be filed in the case. Because these records would be filed with the court, they would clearly qualify as judicial records and as such, there is a strong presumption

in favor of public access to them. The question then is whether the plaintiffs have rebutted that presumption such that the medical records can be treated as confidential.

"There can be no question that medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection." *Doe*, 257 F.3d at 315 (internal alterations omitted) (quoting *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980)). Given that medical records are entitled to privacy protections, the question is whether the disclosure of the information in the plaintiffs' medical records would "work a clearly defined and serious injury" to the plaintiffs. *Cendant Corp.*, 260 F.3d at 194.

With regard to the harm they will suffer if medical records are not treated as confidential, the plaintiffs make the following argument:

> Plaintiffs and members of the class will suffer serious injury if their medical information is publicly disclosed. The records to be produced in the case and filed with the court will include embarrassing and sensitive information about Plaintiffs and the members of the class, including mental health diagnoses, medications they have been prescribed, and graphic descriptions of symptoms of their mental health, including self-harm, sexual conduct, lack of personal hygiene, among others. Allowing these records to be produced with no further protections will subject those whose information is disclosed to risks both inside and outside of Lewisburg. Inside, stigmas against mental illness coupled with explicit characterizations of a prisoner's mental health could lead Plaintiffs and other class members to be targeted, harassed, and ridiculed by cellmates, other prisoners, or even staff. Further, many individuals

9

> housed at Lewisburg eventually will be released from incarceration and the public availability of their private medical information is likely to cause them more harm in obtaining housing and employment – already difficult challenges for former inmates.

*Doc. 71* at 2. The defendants assert that "Plaintiffs have not demonstrated any specified injury by having their, or any potential future plaintiff's, mental health records publicly available." *Doc. 72* at 2. Earlier in their brief, the defendants also argue that the court should

> prohibit the named Plaintiffs from possessing any other inmate's, including other named Plaintiffs', medical records, including mental health records, while in the custody of the Bureau of Prisons. Information that is contained within the medical records and mental health records of inmates could pose security risks if that information is provided to Plaintiffs and used or further disclosed to other persons.

*Id.* at 1.

We find that the plaintiffs have shown a sufficiently specific injury to overcome the presumption of public access. As the plaintiffs state, the public disclosure of their medical information could lead to targeting, harassment, and ridicule by other inmates. In addition, for those plaintiffs who are scheduled to be released from prison, the public disclosure of their medical records could lead to significant difficulties in obtaining employment or housing, in addition to those that they would already face as convicted felons.

Moreover, while the defendants argue that the plaintiffs have not made a sufficiently specific showing of injury, they acknowledge that the medical records

of *other* inmates "could pose security risks" if the plaintiffs had them. This implicitly contradicts the defendants' assertion that the plaintiffs would not suffer harm from the public disclosure of their medical records. If other inmates would suffer harm as a result of the plaintiffs having access to their medical information, it follows that the plaintiffs would also suffer harm as a result of other inmates (as members of the public) having access to the plaintiffs' medical information. Because of that harm, we find that the plaintiffs' medical information should be treated as confidential information. Furthermore, we acknowledge the defendants' argument that other inmates would be harmed by the plaintiffs having access to their medical information, and accordingly restrict the access to those medical records to the plaintiffs' attorneys.

**IV. Order.**

Accordingly, **IT IS ORDERED AS FOLLOWS**:

**(1)** The plaintiffs' motion for a protective order is **GRANTED**.

**(2)** The plaintiffs' proposed protective order (*doc. 71* at 4-13) is **ADOPTED** as the protective order to be used in this case, **with the exception** of the paragraphs of the proposed protective order concerning the disclosure of medical information. To the extent that such paragraphs concern the disclosure of medical information, they are **superseded** by the language on

the disclosure of medical information given in this order and set forth in paragraphs 3-7 below.

**(3)** The medical records (including those related to mental health) of the plaintiffs and other inmates currently or formerly housed at USP Lewisburg shall be treated as confidential and filed under seal. Any documents that quote, reference, or otherwise reproduce information found in said medical records shall be treated as confidential and filed under seal.

**(4)** Any other information or documents produced during the discovery process that reveal(s) private medical information (including information related to mental health) shall also be treated as confidential and filed under seal.

**(5)** Medical records (including those related to mental health) of the plaintiffs and other inmates currently or formerly housed at USP Lewisburg shall be produced in the discovery process upon request by either party subject to the limitations of relevance and proportionality under Federal Rule of Civil Procedure 26(b)(1).

**(6)** Medical records that are marked as confidential by the defendants may not be possessed in any form by any plaintiffs while those plaintiffs are in the custody of the BOP. Such medical records are to be viewable only by

court personnel, plaintiffs' counsel, and any people working under the direct supervision of plaintiffs' counsel.

**(7)** At the conclusion of this litigation and any appeal that may result, all medical records produced during this litigation shall either be returned to the producing party or destroyed with a certification of such destruction.

**(8)** In the event that the language of this order and the language of the plaintiffs' proposed protective order are in conflict, the language of this order shall control.

<em><u>S/Susan E. Schwab</u></em><br>
Susan E. Schwab<br>
Chief United States Magistrate Judge